IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang

Civil Action No. 23-cv-01531-NYW-SBP

TRANSLOGIC CORPORATION d/b/a SWISSLOG HEALTHCARE (NORTH AMERICA) d/b/a SWISSLOG,

    Plaintiff,

v.

ANTHONY J. PUGLIESE,

    Defendant.

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant's Motion to Dismiss Plaintiff's Complaint (the "Motion" or "Motion to Dismiss"). [Doc. 11]. The Court has reviewed the Motion and the related briefing, the applicable case law, and the entire case file, and concludes that oral argument would not assist in the resolution of this matter. For the reasons set forth below, the Motion to Dismiss is respectfully **GRANTED**.

## BACKGROUND

The Court draws the following facts from the Complaint, [Doc. 1], and takes them as true for purposes of this Order.[1] Defendant Anthony J. Pugliese ("Defendant" or

---

[1] A Rule 12(b)(1) motion may assert a facial attack or a factual attack on the Court's subject matter jurisdiction. *Baker v. USD 229 Blue Valley*, 979 F.3d 866, 872 (10th Cir. 2020). "A facial attack assumes the allegations in the complaint are true and argues they fail to establish jurisdiction. A factual attack goes beyond the allegations in the complaint and adduces evidence to contest jurisdiction." *Id.* The Court construes the Motion to Dismiss as raising a facial attack and thus takes the allegations in the Complaint as true. *See Colo. Mont. Wyo. State Area Conf. of NAACP v. U.S. Election Integrity Plan*, No. 22-cv-00581-PAB, 2022 WL 1266612, at *2 (D. Colo. Apr. 28, 2022) ("Because defendants challenge the sufficiency of plaintiffs' jurisdictional allegations, but do not dispute the

"Mr. Pugliese") was employed with Plaintiff Translogic Corporation, d/b/a Swisslog Healthcare (North America), d/b/a Swisslog ("Plaintiff" or "Swisslog Healthcare") from 2012 to 2023. [*Id.* at ¶¶ 8, 18]. In December 2014, Defendant accepted and signed an offer letter from Plaintiff for a new position that required Defendant to relocate to Denver, Colorado. [*Id.* at ¶ 9]. Defendant relocated to Denver. [*Id.*]. In April 2015, Defendant accepted and signed an offer letter for a new position located in Colorado. [*Id.* at ¶ 10].

From 2016 to 2023, Defendant notified Plaintiff of various changes of address, first relocating within the Denver area and then relocating to Florida in 2019. [*Id.* at ¶ 11]. That year, Plaintiff withheld Colorado state income taxes for Defendant; after Defendant contacted Plaintiff and requested that it notify the Colorado Department of Revenue that those taxes were withheld in error, Plaintiff did so. [*Id.* at ¶ 12].

Plaintiff sent Defendant another offer letter for the position of Senior Sales and Marketing Vice President in January 2021. [*Id.* at ¶ 13]. The letter stated:

> It is my understanding that your primary residence is in Florida, as such, we make this offer to your [sic] under Translogic Corporation d/b/a Swisslog Healthcare which falls under US employment laws. This position continues to require travel for work purposes. We expect that you will primarily work from Florida, Denver, or other agreed upon location in the United States as soon as reasonably possible when COVID-19 restrictions begin to lessen.

[*Id.*]. Defendant signed and accepted the offer letter. [*Id.*]. The next year, Plaintiff sent Defendant another letter for a new position, which again stated: "It is my understanding that your primary residence is in Florida, as such, we make this offer to your [sic] under Translogic Corporation d/b/a Swisslog Healthcare which falls under US employment laws." [*Id.* at ¶ 14]. Defendant signed and accepted the offer letter. [*Id.*].

---

allegations, . . . and have not provided any evidence to rebut plaintiffs' allegations, the Court considers defendants' challenge to be facial.").

2

In or about July 2022, Plaintiff learned that Defendant had been primarily working in Canada while providing employment services to Plaintiff, contrary to Defendant's prior representations about his Florida residency and United States-based employment. [*Id.* at ¶ 15]. After Plaintiff sent Defendant a letter regarding his Canadian tax obligations, Defendant responded that he was a United States resident and employee and had been since January 2015. [*Id.* at ¶¶ 16–17]. After Defendant ceased communications with Plaintiff, in May 2023 Plaintiff sent Defendant a letter to his Florida address confirming his separation of employment due to job abandonment. [*Id.* at ¶ 18].

Swisslog Healthcare filed this federal action on June 16, 2023, raising one count of breach of contract, one count of breach of fiduciary duty, one count of fraudulent misrepresentation, and one count of unjust enrichment. [*Id.* at ¶¶ 22–42]. The Complaint states that "[c]ontemporaneous with" its filing, Swisslog Healthcare "will send a letter to the Canada Revenue Agency ('CRA') under its Voluntary Disclosures Program ('VDP letter') notifying the CRA of Defendant's work in Canada and his Canadian tax obligations for 2018 to 2023." [*Id.* at ¶ 19]. Plaintiff alleges that it "may be liable for a payment [to the CRA] in the amount of $1,176,524.34, Canadian dollars, which is approximately $890,081.84 in U.S. dollars." [*Id.* at ¶ 21].

In response, Defendant filed the instant Motion. Defendant argues that Plaintiff's claims should be dismissed under either Rule 12(b)(1) for lack of subject matter jurisdiction or Rule 12(b)(6) for failure to state a claim because the Complaint fails to allege that Plaintiff has suffered any damages. [Doc. 11 at 1–2]. Plaintiff has filed a Response, [Doc. 12], and Defendant has replied, [Doc. 20]. After briefing was complete, Plaintiff filed an unopposed motion to submit an unredacted version of its Exhibit A, *see*

3

[Doc. 31; Doc. 32 (Exhibit A)], which the Court granted, [Doc. 35]. The Court then permitted Defendant to file a supplemental brief to address the new version of the exhibit, *see* [Doc. 38], and Plaintiff thereafter responded to Defendant's supplement, *see* [Doc. 39]. The matter is fully briefed and ready for adjudication.

## LEGAL STANDARDS

Federal courts have limited jurisdiction and "possess only that power authorized by Constitution and statute . . . which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted). Rule 12(b)(1) provides that a complaint may be dismissed for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). "Dismissal under Rule 12(b)(1) is not a judgment on the merits of the plaintiff's claim. Instead, it is a determination that the court lacks authority to adjudicate the matter." *Creek Red Nation, LLC v. Jeffco Midget Football Ass'n, Inc.*, 175 F. Supp. 3d 1290, 1293 (D. Colo. 2016) (citing *Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994)). Courts have an independent obligation to determine whether subject matter jurisdiction exists, even in the absence of a challenge from any party. *1mage Software, Inc. v. Reynolds & Reynolds Co.*, 459 F.3d 1044, 1048 (10th Cir. 2006).

"The Supreme Court's standing jurisprudence contains two strands: Article III standing, which enforces the Constitution's case-or-controversy requirement, and prudential standing, which embodies judicially self-imposed limits on the exercise of federal jurisdiction." *Wilderness Soc'y v. Kane Cnty.*, 632 F.3d 1162, 1168 (10th Cir. 2011) (en banc) (cleaned up). Article III standing is a jurisdictional prerequisite to suit and requires "(1) an 'injury in fact,' (2) a sufficient 'causal connection between the injury

4

and the conduct complained of,' and (3) a 'likel[ihood]' that the injury 'will be redressed by a favorable decision.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157–58 (2014) (alterations in original) (quoting *Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 560–61 (1992)).

Article III limits federal courts' jurisdiction to "cases" and "controversies." *Id.* at 157. A controversy must be "definite and concrete, touching the legal relations of parties having adverse legal interests," and "a real and substantial controversy admitting of specific relief through a decree of a conclusive character," *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240–41 (1937), which means that federal courts only have subject matter jurisdiction over claims that are ripe for review, *United States v. Cabral*, 926 F.3d 687, 693 (10th Cir. 2019). "A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998) (quotation omitted).

## ANALYSIS

Mr. Pugliese argues that the Court lacks subject matter jurisdiction over Plaintiff's claims because Plaintiff does not allege that it has actually suffered any damages, such that its claims are not ripe. [Doc. 11 at 2–3]. Defendant hints at, but does not fully develop, an Article III standing argument, *see* [*id.* at 2 ("When a plaintiff has not yet sustained injury for alleged wrongdoing, the court lacks subject matter jurisdiction under Rule 12(b)(1).")], but he raises a slightly more developed standing argument in his Reply, *see* [Doc. 20 at 5]. While arguments that are only meaningfully raised for the first time in a reply brief are generally deemed waived, *see White v. Chafin*, 862 F.3d 1065, 1067 (10th Cir. 2017), the Court has an independent obligation to assure itself of its jurisdiction

5

and must address Article III standing sua sponte, *Santa Fe All. for Pub. Health & Safety v. City of Santa Fe*, 993 F.3d 802, 813 n.5 (10th Cir. 2021).  And in any event, the Court finds that the standing and ripeness issues in this case essentially "boil down to the same question."  *Susan B. Anthony List*, 573 U.S. at 157 n.5 (quotation omitted).

      The Court agrees with Defendant that the Complaint fails to allege any actual damages suffered by Plaintiff.  The Complaint consistently references the *possibility* of tax exposure for Swisslog Healthcare due to the unpaid Canadian taxes, *see, e.g.*, [Doc. 1 at ¶¶ 21, 26, 41–42], but it does not allege that Plaintiff actually made any payments related to unpaid Canadian taxes or that it otherwise incurred any damages, *see generally* [*id.*].  While Plaintiff attempts to assert in its Response and related exhibits that it has now made a payment to Canadian tax authorities, *see* [Doc. 12 at 1; Doc. 31-1 at ¶ 3; Doc. 32; Doc. 12-3 at 2], it is well settled that a plaintiff may not amend its pleading by raising new facts in a response to a motion to dismiss, *Sudduth v. Citimortgage, Inc.*, 79 F. Supp. 3d 1193, 1198 n.2 (D. Colo. 2015).[2]  Similarly, Plaintiff's statement that "the identified potential liability has a present impact on Swisslog Healthcare's business and creates an actual and imminent injury for Article III standing," *see* [Doc. 12 at 5], is not reflected in any allegations in the Complaint.  *Compare Protocols, LLC v. Leavitt*, 549 F.3d 1294, 1299–1301 (10th Cir. 2008) (discussing how potential or contingent liability, *with attendant instant effects*, may be sufficient to establish Article III standing); *id.* at 1301

---

[2] Plaintiff argues that the Court "should consider the VDP letter in deciding Defendant's motion to dismiss for lack of standing" because it is referenced in the Complaint, central to Plaintiff's claims, and indisputably authentic.  [Doc. 12 at 5].  But consideration of the letter would not change the fact that the allegations in the Complaint fail to allege any actual injury—like the Complaint, the letter estimates the amount of Canadian taxes owed, and it does not add anything to the allegations in the Complaint.  *See generally* [Doc. 32].

6

("[A]ccording to affidavits submitted by Protocols, this potential liability has a present impact on its business—that is, the contingent liability has created an actual and imminent injury.").

Accordingly, the Court agrees with Defendant that Plaintiff's Complaint fails to allege an injury-in-fact sufficient to demonstrate Article III standing. However, given the representations in the Response suggesting that Plaintiff has incurred damages *since* the filing of the Complaint, the Court does not find it appropriate to outright close this case. Instead, the Court will sua sponte grant Plaintiff leave to amend its Complaint to add in allegations concerning its payments to the CRA. Because the Motion to Dismiss focuses on the failure to allege any damages, *see* [Doc. 11], and the Court is granting Plaintiff leave to add allegations only to cure this deficiency, <u>the Court will not entertain any motion to dismiss directed at Plaintiff's anticipated amended pleading unless, after a robust meet and confer, Defendant contends that Plaintiff continues to allege only an anticipated, rather than an existing, injury</u>.[3]

## CONCLUSION

For the reasons stated herein, it is hereby **ORDERED** that:

(1)   Defendant's Motion to Dismiss Plaintiff's Complaint [Doc. 11] is **GRANTED**;

(2)   Plaintiff's claims are **DISMISSED without prejudice** for lack of subject matter jurisdiction under Rule 12(b)(1);

---

[3] The Court is respectfully unpersuaded by Defendant's concerns about the possibility that Plaintiff may receive a refund of its voluntary tax payment. *See* [Doc. 38 at 3]. In the event that Canadian tax authorities decide that Plaintiff is not obligated to pay taxes and refund Plaintiff's payment, Defendant may raise appropriate arguments about dismissal at that time.

7

(3) On or before **April 22, 2024**, Plaintiff may file an amended pleading to include additional allegations of its alleged damages. Any amended pleading must comply with the requirements of D.C.COLO.LCivR 15.1; and

(4) If no amended pleading is filed by the Court's deadline, the Court will instruct the Clerk of Court to close this case.

DATED: April 8, 2024

BY THE COURT:

_____
Nina Y. Wang
United States District Judge

8